Ford v. Hancock.

dent and cautious. *2 Russ. on Crimes, 289; Colbert v. The State, 1 Tex. Ct. App., 314.*

3. INSTRUC-
TION:
Inapplica-
ble to facts,
not admis-
sible.

## FORD v. HANCOCK.

1. USURY LAWS: *Protect only the borrower and privies.*
   Usury laws are for the protection of the borrower only, and an usurious contract can be avoided only by him or his privies, — never by the usurer.

2. USURY: *In sale of property on time.*
   It is not usury for one to sell property on credit for a higher price than he would have sold it at for cash and legal interest added. But if the sale be really made on a cash estimate, and time be given to pay, and an amount is agreed to be paid greater than the cash price with legal interest would amount to, this is an usurious agreement for forbearance; and if the intention be not apparent, it is for the jury to determine whether it was a *bona fide* credit sale or a device to cover usury.

3. SAME: *In purchase of property.*
   F agreed to loan H money at usurious interest, to buy corn, but upon application for it sold him instead, corn on time, at a price above its cash value, sufficient to cover the agreed interest. *Held,* that the sale was usurious.

APPEAL from *Drew* Circuit Court.
Hon. T. F. SORRELLS, Circuit Judge.

*W. S. McClain*, for appellant:

The contract being void for usury no title passes to the property sold. 15 *Mass.*, 359 ; 66 *N. C.*, 47 ; 8 *Foster* (*N. H.*), 101.

.Usury not a crime, and the doctrine of *pari delicto* has no application. *Tyler on Usury*, 431 ; 5 *Denio* (*N. Y.*), 236. Held not to apply to contract made on Sunday, 10 *Ala.*, 566 ; 12 *Mich.*, 378.

Demand unnecessary where defendant was claiming and using the property as his own. 17 *Ark.*, 172 ; 24 *ib* ; 264.

HARRISON, J. This was an action of replevin by the appellant against the appellee, for two mules, six head of cattle, two thousand pounds of seed cotton and twenty-five bushels of corn, in which the detention only, was complained of, and which was commenced on the thirtieth of December, 1878.

The defendant gave bond, and retained the possession of the property.

He pleaded that he was the owner of the property, and that the only claim the plaintiff had to it was under two mortgages he had given him upon it, by which usurious interest was intended to be secured, and which were therefore void.

The plaintiff read in evidence the mortgages, the first dated the thirty-first day of January, 1878, was upon the mules and cattle, and the crops of cotton and corn the defendant should that year plant, and was given to secure a note of that date for $381.25, payable on the first day of October, following; the other, dated the second day of June, of the same year, was also upon the mules and cattle, and his growing crops of cotton and corn, and given to secure a debt of $411.25, for goods sold, and supplies

to be thereafter furnished, to the amount of $38.75, and interest thereon, at 10 per cent., and like the note, to become due on the said first day of October.

Both mortgages contained a power to the plaintiff, if default in the payment should be made, to take possession of the property, and after ten days' advertisement, sell the same at auction for the satisfaction of the debt.

The plaintiff then testified that he, when the first mortgage was given, sold the defendant the two mules in controversy, and agreed to furnish him supplies to the amount of $100, but it was a condition of the sale that the mortgage should be given. One of the mules he bought out of a drove the week before, and paid for it $100, and he sold it to the defendant for $125; the other he thought he sold him for $167.50, but could not distinctly recollect the price.

In June, he found that he had furnished him provisions and other supplies exceeding the amount agreed on, and as he wanted more, he consented to furnish them to him upon his giving another mortgage, which he agreed to, and the second mortgage was executed.

The sum mentioned in the second mortgage was the aggregate price of the mules, and of the provisions and other supplies furnished, and it embraced no interest and there was no agreement about any. He said he never loaned the defendant any money, and never agreed to do so. How much meat or corn he let him have, he was unable to state; or for how much he stood responsible on his account. He made a profit, he said, on the supplies he furnished. The defendant had paid nothing and still owed him the whole amount.

The defendant testified that the mules were bought on a credit until October. That for one he was to pay $100 and for the other $125, and to pay 25 per cent. interest. The

plaintiff also agreed to let him have $100 in money, with which to buy provisions, and for which he was to pay 25 per cent. interest, the interest on the money to be deducted when the plaintiff should let him have it. The price of the mules, with the interest added, and the $100, made, he said, the sum mentioned in the first mortgage, $381.25, and to secure which he at the time executed the mortgage.

That he afterwards applied to the plaintiff for money, with which to buy corn, which was then selling at seventy-five cents per bushel, but he refused to let him have any, and proposed to sell him corn at one dollar per bushel, which, he said, as defendant had agreed to pay twenty-five per cent. interest for the money, was the same as lending him the money to buy it with and charging him twenty-five per cent. interest for it; and he took the corn from him at that price. He also got meat from him, and goods at Harley's and one or two other stores, but with the exception of twenty-five cents, got no money from him. He did not state what the provisions and supplies obtained amounted to; and said nothing about the second mortgage.

Tyson Hancock also testified for the defendant. He was present, he said, when one of the mules was bought. The defendant was to pay for it $125, and interest on that at twenty-five per cent.

The plaintiff asked the following instruction to the jury, which the court refused to give:

"If Ford, in selling the mules to Hancock, made a usurious contract, the contract was null and void, and the mules remained the property of Ford, and he was entitled to a verdict for them."

He also objected to the following, given for the defendant:

"1. All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon

Ford v. Hancock.

or whereby there shall be reserved, taken or secured, or agreed to be taken or reserved, any greater sum or greater value, for the loan or forbearance of any money, goods, things in action, or any other valuable thing than 10 per cent. per annum, shall be void.

"2. If the jury believe, from the evidence, that the defendant agreed to pay, and the plaintiff agreed to receive, more than 10 per cent. per annum for the loan of money to the defendant by the plaintiff, and that the same formed a part of the amount secured by the mortgages, the plaintiff can not recover under the mortgages.

"3. If the jury believe, from the evidence, that the plaintiff sold the defendant the two mules in controversy, and agreed to advance him $100 in money or supplies, less 25 per cent., and took the mortgages, and reserved therein a greater rate of interest than 10 per cent. per annum for the loan or forbearance of the purchase-money of the mules, the mortgages are void, and he can not recover under them."

The jury returned a verdict for the defendant. The plaintiff filed a motion for a new trial, assigning as grounds therefor, the refusal of the instruction to the jury, asked by him; the giving of those objected to, for the defendant, and that the verdict was contrary to the evidence.

The court overruled the motion, and he excepted, and appealed.

1. USURY LAWS. Protect only the borrower and privies Laws against usury are for the protection of the borrower only, who is regarded as the victim of oppression; and a contract tainted with usury can be avoided but by him or his privies.

The principle of them is well and succinctly stated by the supreme court of Wisconsin, in *Riley v. Gregg, 16 Wis., 666.* The court say: "It is a general principle, running through all the decisions, that the penalties of the law

Ford v. Hancock.

against usury are aimed exclusively against the lender; that he alone is regarded as in the wrong, whilst the borrower is considered wholly innocent. It follows, hence, that usurious agreements are not so absolutely void that no rights whatever can be founded upon them. They are void only at the option of the borrower and those in privity with him. Not being within the pale of law, he may satisfy, or repudiate, at his pleasure. * * * But not so with the party taking the usury. Looked upon as the author of the wrong, he is precluded, upon general principles of public policy, from setting it up to defeat any rights which the other party, or those in legal privity with him, may claim by virtue of the contract. He stands, in this respect, upon the same footing as the guilty party in case of fraud. The injured party may repudiate, but the guilty never." *Miller v. Kerr, 1 Bailey, 4; LaForge v. Hester, 5 Seld., 241; Draper v. Trescott, 29 Barb., 401; Schroeppel v. Corning, 5 Denio, 236.*

It may be observed, also, that in this case the contract was, on the part of the plaintiff, executed, and that the property in the mules passed, upon their delivery, to the defendant.

The instruction asked by the plaintiff was properly refused.

Usury is a corrupt agreement for more than the legal rate of interest on a loan of money, or for the forbearance of a debt.

2. USURY: In sales of property on credit.

It is not usury for one who sells a piece of property on credit, to contract for a higher price than he would have sold it at for cash. If the intention be, in fact, to sell on credit, he has the right to fix a price greater than the cash price, with legal interest added; but if the sale be really made on a cash estimate, and time be given to pay the same, and an amount is assumed to be paid greater than

the cash price, with legal interest, would amount to, this is an agreement for forbearance that is usurious.

Therefore, where the intention is not apparent, it is a question for the jury to determine, whether it was a *bona fide* credit sale, or a device to cover usury. *Tyler on Usury, 92.*

3. ——: *In purchase of property.* The first of the defendant's instructions was in the language of the statute, and the second was a proposition plainly deducible from it. The third was not inconsistent ·with the views just expressed. That in connection with the following, given at the instance of the plaintiff: " If Ford had mules which he was willing to sell at a given price in cash, it was not usury to sell them at a greater price on a credit, although the credit price was 25 per cent. more than the cash price," fairly presented the question of intention to the jury.

If, as testified by the defendant, the plaintiff agreed to lend him $100 at 25 per cent. interest, and when afterwards. applied to by the defendant for a portion of it, to buy corn with, which could then be bought at seventy-five cents a bushel, instead of letting him have the money, let him have corn at one dollar a bushel as an equivalent for the money, the transaction was clearly usurious.

The judgment is affirmed.