HOME BUILDING & SAVINGS ASSOCIATION *v.* SHOTWELL.

Opinion delivered April 27, 1931.

751

754

*Hardin & Barton,* for appellant.

*A. M. Dobbs* and *Pryor & Pryor,* for appellee.

HART, C. J., (after stating the facts). When a *bona fide* sale of land is intended, the vendor may charge a much higher price for his property on a credit than he would have done for cash for the element of lending and borrowing money is absent from the transaction; but if the sale is not *bona fide,* and there is an intent under its form, by excess of price, to receive more than lawful interest, the transaction will be usurious. *Heytle* v. *Logan,* 1 A. K. Marsh (Ky.) 529; *Quackenbos* v. *Sayer,* 62 N. Y. 344; *Barr* v. *Collier,* 54 Ala. 39; *Collier* v. *Barr,* 64 Ala. 543; and *Ford* v. *Hancock,* 36 Ark. 248. Our later decision have adhered to this rule and have been applied according to the facts in the particular case. *Tillar* v. *Cleveland,* 47 Ark. 287, 1 S. W. 516; *Ellenbogen* v. *Griffey,*

55 Ark. 268, 18 S. W. 126; *Blake Bros.* v. *Askew & Brummett,* 112 Ark. 514, 166 S. W. 965; *Smith* v. *Kauffman,* 145 Ark. 548, 224 S. W. 978; and *Edwards* v. *Wiley,* 150 Ark. 480, 235 S. W. 54.

In this connection, it may be stated that parol evidence is admissible to show that the contract, although legal upon its face, was in fact an illegal agreement or cover for usury. Otherwise the very purpose of the law in forbidding the taking of usury under any kind of trick would be defeated. *Houghton* v. *Burden,* 228 U. S. 161, 33 S. Ct. 491; *Tillar* v. *Cleveland,* 47 Ark. 291, 1 S. W. 516; and *Roe* v. *Kiser,* 62 Ark. 92, 34 S. W. 534, 54 Am.

In *Ellenbogen* v. *Griffey,* 55 Ark. 268, 18 S. W. 126, the court, speaking through Mr. Justice Hemingway, said:

"In a *bona fide* sale of land or chattels usury cannot enter, for the element of lending and borrowing is absent; but, if the sale is a mere device to cover a loan and exact excessive interest, it will not be protected by its false cover. *Davis* v. *Garr,* [6 N. Y. 124] 55 Am. Dec. 387, 393, and cases cited; *Struthers* v. *Drexel,* 122 U. S. 487 [7 S. Ct. 1293]. In the cases in this court relied upon by appellee, the transactions were found to be in fact loans of money, put in the form of sales to evade the statutes against usury; and the court held that they were usurious loans, and that the false color given them could not defeat the statute. *Ford* v. *Hancock,* 36 Ark. 248; *Driver* v. *Driver,* 46 Ark. 50; *Tillar* v. *Cleveland,* 47 Ark. 291, [1 S. W. 516]."

This court has uniformly recognized that borrowing and lending money is indispensable to constitute usury; but that, no matter what the form of the contract may be, no device or shift intended to evade the usury laws will be upheld. The court has also recognized that, while an exhorbitant price will not of itself constitute usury, yet it is a circumstance to be considered in determining whether the transaction was a *bona fide* sale of property or was intended for a cover for usury. It has been frequently judicially stated that one of the most

usual forms of usury is a pretended sale of goods or other property.

It seems to us that the transaction in question was a buying of land at an exhorbitant price to obtain a loan, and was therefore usurious. Shotwell wished to buy the lots in controversy; and Norman, who was the agent of his father-in-law, the owner of the lots, was authorized to sell them for $650 and was willing to sell them for that price. Webb represented a real estate loan company and arranged that Shotwell should execute a note to his company for $1,200 before he would lend him the money. Shotwell never got any of the $1,200, and it was not intended that he should get any of it. The plaintiff in this case and the company represented by Webb occupy the same offices and had the same president. It was never intended that the plaintiff should furnish any one $1,200. They only agreed to furnish to Norman, the agent of the owner of the property, $650, which was his price for it. $500 of this was paid in cash, and $150 of it was the purchase price of a second-hand automobile which was owned by the Commercial Loan & Investment Company, whose agent Webb was.

As was stated in the case of *Jones* v. *Phillips,* 135 Ark. 578, 206 S. W. 40, usury laws are enacted to protect the weak and necessitous from oppression; and the lender of money, by no device or deception, is allowed to deceive the borrower so as to conceal the fact that he is taking usury. When the real transaction is a loan of money, and the lender attempts to receive from the borrower more than the amount actually advanced, no matter under what pretext, it contravenes the policy of our usury law, and such contract can not be enforced. As aptly said in *Heytle* v. *Logan,* 1 A. K. Marsh (Ky.) 529: "In the language of Lord Mansfield on a like occasion, it may be truly said, 'it is impossible to wink so hard as not to see,' what was expected by this contract—that its end was more interest on the money advanced than the law authorized."

Under the facts stated in the record, we are of the opinion that the chancellor was justified in finding that the real transaction was the borrowing and lending of money, and that the contract contemplated a greater charge of interest than allowed by law, and that it was a mere device or shift to avoid our usury laws. It follows that the decree will be affirmed.